IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
GAINESVILLE DIVISION

UNITED STATES OF AMERICA

v.                                                              CASE NO. 1:06-cr-00029-MP-AK

PETER A. ANTON,
EDNA A. ANTON,

     Defendant.

_____/

## O R D E R

This matter is before the Court on Doc. 58, Motion to Suppress Evidence Seized Pursuant to Executed Search Warrant, filed by Defendant Peter Anton, and Doc. 71, Motion to Sever Defendant, filed by Defendant Edna Anton. The Government has filed a Response in Opposition to Defendant Peter Anton's Motion to Suppress. Doc. 64. An evidentiary hearing on these motions was held on Wednesday, February 14, 2007. At the hearing, Defendant Edna Anton adopted her co-defendant's Motion to Suppress. For the following reasons, the Motion to Suppress is denied, and the Motion to Sever is granted.

### I. Motion to Suppress

On December 27, 2005, Magistrate Judge Allan Kornblum issued a one-page search warrant authorizing Special Agent Shannon B. Desmond of the Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") to search two residences and vehicles owned by Defendant Peter Anton. The warrant also authorized the seizure of "[f]irearms, ammunition and firearms and ammunition receipts." The application for the warrant by Special Agent Desmond was supported by a thirteen-page affidavit, and nine pages of attachments. Special Agent Desmond's

affidavit alleges that four months prior to the issuance of the search warrant, Defendant Peter Anton had been seen handling and selling firearms at various gun shows between July 2, 2005, and August 15, 2005. Some of this information comes from an unnamed confidential informant, while other information was provided by ATF Special Agents.

Defendant Peter Anton contends that the "affidavit is completely devoid of any facts, information or evidence suggesting that there was a crime(s) being committed at either of these two residences, much less any probable cause to believe that a crime(s) was being committed at these residences." Doc. 58 at 7. Defendant states that the affidavit does not contain any factual information or allegations that firearms were ever seen at either of Peter Anton's two residences, and that facts supporting the affidavit were stale. Focusing on paragraph 29 of Special Agent Desmond's affidavit, Defendant argues that the affiant's past experience and training as a Special Agent with ATF is insufficient to establish probable cause to search his residences; specifically, the experience "that convicted felons and dealers of firearms, who possess firearms, commonly maintain firearms, ammunition, sales receipts and other documents related to the ownership of said firearms and ammunition in their residences." Also, Defendant takes issue with the time stamps on the application for the search warrant and the issuance of the search warrant, arguing that Magistrate Kornblum only spent nine minutes to read the twenty-three page application, and implying that he wholly abandoned his judicial role and merely rubber-stamped the application.

Finally, Defendant argues that the vehicles described in Special Agent Desmond's affidavit are identified by the wrong license plate numbers. The tag number listed for the Tailgator mobile trailer, which the affidavit alleges was used by Defendant Anton to transport

firearms to and from gun shows, is actually a license tag attached to a 1980 boat trailer. Because Defendant alleges that this boat trailer was always stored in a building, out of sight from the street and out of public view, he contends that the "information produced to the Magistrate was the result of a fictional account and acquired through public records." Also, because the tag number for the 1995 Dodge truck had expired and was no longer in use at the time of the application for a search warrant, Defendant argues for the same inference that the information in the affidavit was fabricated.

In response, the Government states that many of the allegations Defendant raises concerning the warrant's specificity regarding the description of the places to be searched are rebutted by the fact that attachments to the warrant more fully identified the residences and vehicles, and that Special Agent Desmond had personal knowledge as to the locations to be searched. Further, the Government points out that the information provided by the confidential informant was verified by law enforcement, and therefore serves as a competent, reliable source for the affiant. The Government contends that combined with the independent investigation by law enforcement officers, this information established probable cause that firearms would be found in Defendant's homes and vehicles.

Finally, the Government takes issue with the suggestion that Magistrate Judge Kornblum abandoned his judicial role by signing the search warrant within nine minutes of the filing of the warrant. The warrant shows that the Magistrate signed the warrant at 4:10 p.m. on December 27, 2005, and the time stamp at the Clerk's Office reflects a filing time of 4:01 p.m. The Government's position is that the time stamps Defendant relies on must be inaccurate, since a warrant is filed with the Clerk only after the warrant has been signed and approved by the

Magistrate. Because the Government provided the Magistrate with a faxed copy of the affidavit some period of time prior to the presentation of the agent before the Court, the Government argues that issue of time stamps is misplaced anyway, as the Magistrate had adequate time to review the affidavit.

The central arguments raised in Defendant's motion to suppress on the basis of the lack of probable cause are the unreliability of the confidential informant, the staleness of information, and insufficiency of the facts. Search warrants must be supported by probable cause to satisfy the dictates of the Fourth Amendment. United States v. Harris, 403 U.S. 573, 577, 91 S.Ct. 2075, 2079, 29 L.Ed.2d 723 (1971). The probable cause standard is a "practical, nontechnical conception." Illinois v. Gates, 462 U.S. 213, 231 (1983) (quoting Brinegar v. United States, 338 U.S. 160, 176 (1949)).

In reviewing Defendant Peter Anton's charge that the affidavit is not supported by sufficient facts to establish probable cause, only the information presented to the magistrate who issued the warrant may be considered. "Probable cause to support a search warrant exists when the totality of the circumstances allow a conclusion that there is a fair probability of finding contraband or evidence at a particular location." United States v. Brundidge, 170 F.3d 1350, 1352 (11th Cir. 1999) (citation omitted). Specifically, Defendant argues that the search of his residences and vehicles was not supported by probable cause because no facts exists that firearms were ever seen at either location. In her affidavit, Special Agent Desmond states that the same trailer that Defendant used to transport firearms to gun shows, and in which forty-six firearms and twenty rounds of ammunition were seized on November 19, 2000, was seen by ATF Special Agents at gun shows where Defendant was observed in possession of firearms.

Special Agent Desmond herself personally observed this trailer parked next to a large out building on Defendant's property, and in her professional experience, she "knows that convicted felons who possess firearms . . . commonly store firearms and ammunition for those firearms in their residences or other secure areas on their property." Desmond Affidavit, Para 29. Further, Defendant told Special Agent Barborini that he currently had three hundred and forty-seven guns, and Defendant told Special Agent Neal that he sold firearms to other dealers. The totality of the circumstances establish probable cause–Defendant traveled to gun shows towing the same trailer he had used previously to transport firearms to gun shows, this trailer was observed parked next to a large out building on Defendant's residential property, Defendant admitted that he owned hundreds of firearms, Defendant admitted that he sold firearms, Defendant was seen handling firearms at his sales table at gun shows, and a firearm that was in Defendant Edna Anton's possession at her residence was allegedly sold by Defendant Peter Anton at a gun show. Based on the affidavit of Special Agent Desmond, the Magistrate had ample information to conclude that a reasonable probability existed that firearms, ammunition, and receipts would be found at the areas described in the search warrant. Therefore, the affidavit is supported by sufficient facts to establish probable cause.

The same analysis applies to the issue of the confidential informant's reliability. In Gates, the Supreme Court adopted the "totality of the circumstances" test for determining whether an informant's tip established probable cause. Gates, 462 U.S. at 238. Two factors are key to this analysis: the informant's "veracity" or "reliability" and his or her "basis of knowledge." In evaluating whether an informant's tip establishes probable cause, the degree to which the report is corroborated is an important consideration. When there is sufficient

independent corroboration of an informant's information, there is no need to establish the veracity of the informant.  See United States v. Sturmoski, 971 F.2d 452, 457 (10th Cir.1992). In this case, the confidential informant had provided reliable and verifiable information in the past, and the basis for the knowledge that Defendant sold firearms at gun shows was through the confidential informant's personal observation of the Defendant at these gun shows.  The confidential informant accurately predicated that Defendant would attend the gun show in Melbourne, Florida, on July 16, 2005, and Defendant's statement that he had more than three hundred firearms was independently corroborated by ATF Special Agents.  Therefore, under the totality of the circumstances, the confidential informant's information sufficed to establish probable cause.

      Defendant also asserts that the information supporting Special Agent Desmond's affidavit was stale, and therefore could not establish probable cause to support the issuance of the search warrant on December 27, 2005.  Specifically, the information in Agent Desmond's affidavit that Peter Anton's wife, Edna Anton, may have been in possession of certain firearms at her house between August 9, 2004, and November 23, 2004, and that Defendant Peter Anton had been seen handling and/or selling these firearms at certain public gun shows between July 5, 2005, and August 15, 2005.  The issue is whether these alleged facts were so distantly removed in time from the date of the issuance and execution of the search warrant as to render the information stale and the warrant invalid.

      With regards to staleness, the Eleventh Circuit has defined stale search warrants as "warrants that, when issued, were based on information too old to create a sufficient probability that the items sought were still at the location to be searched.  In other words, the passage of time

made it more likely that the circumstances upon which the warrant was issued had changed, thus dissipating probable cause." United States v. Santa, 236 F.3d 662, 672 n. 15 (11th Cir. 2000). Courts have held that "the information supporting the government's application for a warrant must show that probable cause exists *at the time the warrant issues*." United States v. Bervaldi, 226 F.3d 1256, 1264 (11th Cir. 2000) (emphasis added).  "There is no particular rule or time limit for when information becomes stale." Id. at 1265.  Rather, "staleness is an issue which must be decided on the peculiar facts of each case." United States v. Bascaro, 742 F.2d 1335, 1345 (11th Cir. 1984) (quoting United States v. Hyde, 574 F.2d 856, 865 (11th Cir. 1978)). However, there are factors that serve as guidance in this area:

> In addition to the length of time, courts should consider the 'nature of the suspected crime (discrete crimes or ongoing conspiracy), habits of the accused, character of the items sought, and nature and function of the premises to be searched.' For example, the former Fifth Circuit held that four-month-old reports of projectiles in the walls and floors of a dwelling as a result of the test-firing of the murder weapon were not stale because the 'floors and walls of a house are relatively permanent fixtures and would not likely be subject to removal over the period of four months.'

Bervaldi, 226 F.3d at 1264 (internal citations and footnotes omitted).  In considering the nature of the crime, courts have "distinguished between criminal activity which is protracted and continuous and that which is isolated." Id. For instance, "where an affidavit recites a mere isolated violation then it is not unreasonable to believe that probable cause quickly dwindles with the passage of time.  On the other hand, if an affidavit recites activity indicating protracted or continuous conduct, time is of less significance." Id. (quoting Bascaro, 742 F.2d at 1345-1346).

The evidence reflects that Defendant had been engaged in a continuous pattern of traveling to various gun shows throughout Florida, at which he was observed allegedly handling

or selling firearms.  One of the firearms transferred to Defendant Edna Anton on August 9, 2004, which she claims were stored at one of the residences searched, was allegedly sold by Defendant Peter Anton on July 2, 2005, at the South Florida Fair Grounds gun show.  Taking into account the number of firearms the confidential informant and Special Agent heard Defendant claim to own, coupled with Defendant allegedly selling these firearms at gun shows, the information supporting the affidavit was not stale, as there was a sufficient probability that the items sought were still at the location to be searched.

However, assuming *arguendo* that the search warrant was not supported by probable cause, the evidence seized pursuant to it would not be suppressed anyway since the good-faith exception to the exclusionary rule applies in this case.  The executing officer acted with an objective good-faith belief that the warrant was properly issued by a neutral magistrate.  See United States v. Leon, 468 U.S. 897, 920-24, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984).  Although Defendant asserts that the Magistrate wholly abandoned his judicial role by only spending nine minutes on a twenty-three page search warrant application, even assuming that the time stamps are correct, the Government provided the Magistrate with a copy of the application prior to its formal presentation, which allowed the Magistrate to fully review the application.  The handwritten annotations to the search warrant by the Magistrate belie any contention that the Magistrate merely rubber-stamped the application.  The false information the Defendant contends misled the Magistrate is that the license plate numbers described in the affidavit could not have been observed by the affiant, as the vehicles were out of public view, and therefore the affiant was lying.  Since Defendant's trailer and pick-up truck were observed at gun shows by law enforcement, and described beyond their license plates in the application, the Magistrate was

not misled even if the license plate numbers were incorrect.  Finally, as explained previously, the warrant is not facially deficient or so lacking in indicia of probable cause to render official belief in its existence entirely unreasonable.  Therefore, the good-faith exception applies to this case, and the motion to suppress is denied.

## II. Motion to Sever

At the hearing, the Court also heard Defendant Edna Anton's Motion to Sever.  A district court may sever the trial of co-defendants whenever it appears that a defendant would be prejudiced by joint trial with a co-defendant.  Fed. R. Crim. P. 14.  Generally, there is "a preference in the federal system for joint trials of defendants who are indicted together." Zafiro v. United States, 506 U.S. 534, 537, 113 S.Ct. 933, 937, 122 L.Ed.2d 317 (1993).  Because one defendant may not compel another defendant to testify in a joint trial, and because of the tactical reasons a defendant would elect not to take the stand to offer favorable testimony for his or her co-defendant during a joint trial, exculpatory testimony is a standard reason for severance.  However, the defendant moving for severance on the basis of exculpatory testimony has the burden to "demonstrate that a joint trial will result in specific and compelling prejudice to the conduct of his defense." United States v. Schlei, 122 F.3d 944, 984 (11th Cir.1997).

A defendant arguing for severance on the ground that it will permit the exculpatory testimony of a co-defendant "must show: (1) a bona fide need for the testimony; (2) the substance of the desired testimony; (3) the exculpatory nature and effect of the desired testimony; and (4) that the codefendant would indeed have testified at a separate trial." United States v. Machado, 804 F.2d 1537, 1544 (11th Cir. 1986).  If the defendant makes such showing, the district court must then "(1) examine the significance of the testimony in relation to the

defendant's theory of the case; (2) assess the extent of prejudice caused by the absence of the testimony; (3) consider judicial administration and economy; and (4) give weight to the timeliness of the motion." Id.  It is within the discretion of the district court as to whether severance is required, although this discretion is considered abused when severance is denied despite demonstrated prejudice to the defendant's ability to present adequate evidence in his or her own defense.  See United States v. Cobb, 185 F.3d 1193, 1198. (11th Cir. 1999).

The primary issue in considering severance on the basis of exculpatory evidence is the testifying defendant's waiver of Fifth Amendment rights.  Because criminal defendants cannot be compelled to testify as witnesses against themselves, they must voluntary agree to take the stand.  This issue is usually addressed by the testifying defendant understanding that he might waive his Fifth Amendment right against self-incrimination should severance be granted, and still agreeing to testify.  In addressing this concern, the Court's inquiry "with whether a co-defendant will testify for the defendant in a separate trial is limited to determining whether the co-defendant is likely to testify, not whether he is certain to do so." Id. at 1200.  See also Taylor v. Singletary, 122 F.3d 1390, 1393 (11th Cir.1997).  At the hearing, Defendant Peter Anton, after being informed by counsel and the Court of the possible consequences and ramifications of testifying, agreed to testify at the trial of his co-defendant, Edna Anton.  The Court finds that Edna Anton has made the requisite showing that her co-defendant is likely to testify.

Defendant Edna Anton has shown a need for the testimony, has shown the substance of the testimony, as well as the exculpatory nature of the testimony, and that Defendant Peter Anton is likely to testify at a separate trial.  The remaining considerations indicate that severance

should be granted: Peter Anton's testimony forms a significant part of Mrs. Anton's defense theory; the absence of the testimony would prejudice her defense since it is the only evidence as to her lack of knowledge or intent; the severance would not affect judicial administration or economy; and the motion is timely.  Therefore, Defendant Edna Anton's Motion to Sever is granted.  Accordingly, it is hereby

**ORDERED AND ADJUDGED:**

1. Defendant Peter Anton's Motion to Suppress Evidence Seized Pursuant to Executed Search Warrant, Doc. 58, is denied;

2. Defendant Edna Anton's Motion to Sever Defendant, Doc. 71, is granted.

**DONE AND ORDERED** this  _22nd_ day of March, 2007

            *s/Maurice M. Paul*
            Maurice M. Paul, Senior District Judge